IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, </br></br> Plaintiff, </br></br> and </br></br> ASHLEY ALFORD, </br></br> Plaintiff-Intervenor, </br></br> v. </br></br> AARON RENTS, INC. et al., </br></br> Defendants. | Case No. 3:08-cv-683 MJR-DGW |

**ORDER**

Currently pending before the Court are the following motions:

- Defendant Aaron Rents, Inc.'s Motion for Time to Complete the Deposition of Plaintiff-Intervenor Ashley Alford, for an Order Instructing Plaintiff-Intervenor's Counsel to Not Make Coaching Objections, and to Compel Responses to Prior Deposition Questioning (Doc. 84);

- Defendant Aaron Rents, Inc.'s Motion for Extension of Time to Complete the Deposition of Belynda Woods and for an Order Requiring Plaintiff-Intervenor's Counsel to Cease Engaging in Tactics to Delay and Impede the Taking of Depositions in this Case (Doc. 95);

- Defendant Aaron Rents, Inc.'s Motion for Order to Admonish Plaintiff-Intervenor's Counsel to Allow All Deponents to Complete Their Answers Without Interruption, and Against Taking Photographs in Connection with a Judicial Proceeding (Doc. 106);

- Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's First Requests for Production of Documents to Brad Martin (Doc.124), including a complete privilege log;

- Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's Second Request for Production to Aaron Rents, Inc. (Doc.

125)[1];

- Plaintiff-Intervenor's Motion to Compel Responses to Plaintiff-Intervenor's Third Requests for Production to Aaron Rents (Doc. 126);

- Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Allow Plaintiffs to Contact Harassment Hotline Callers (Doc. 127);

- Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Compel Production of All Electronic Images from Security Cameras (Doc. 129);

- Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Require Aaron Rents and Brad Martin to Produce Privilege Logs that satisfy Rule 26 (Doc. 130);

- Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Compel Document Production Compliant with Rule 34 (Doc. 132);

- Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's Fourth Requests for Production (Doc. 134);

- Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's Fifth Requests for Production (Doc. 135);

- Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's First and Second Requests for Production of Documents to Richard Moore (Doc. 136);

- Plaintiff-Intervenor Ashley Alford's Motions to Strike Declarations of Counsel for Defendants (Doc. 142 and 158); and

- Plaintiff-Intervenor Ashley Alford's Motion to Strike Declarations of Vanessa Adams (Doc. 156).

---

[1] In Plaintiff-Intervenor Ashley Alford's Motions to Compel (Docs. 124, 125, 126, 134, and 135), she raises, *inter alia*, the following issues regarding production by Defendants: inadequate discovery responses, improper standing and "shotgun objections," improper withholding of documents based on relevancy, failure to produce documents specifically referred to in deposition, production of documents in an improper "document dump," failure to produce electronically stored documents, and failure to properly Bates-stamp produced documents.

## PROCEDURAL HISTORY

On September 30, 2008, the Equal Employment Opportunity Commission ("EEOC") filed a complaint against Aaron Rents, Inc. ("Aaron Rents"), and Ashley Alford ("Alford") filed a motion to intervene. On October 2, 2008 the Court granted Alford's motion to intervene and Alford filed her intervenor complaint. Alford filed an amended complaint on November 2, 2008.

On December 9, 2008, United States District Judge Michael J. Reagan set a final pretrial conference for March 5, 2010, at 9:00 a.m. and a jury trial for March 22, 2010.[2]  On January 15, 2009, this Court entered a scheduling order setting the close of discovery for October 5, 2009, and a dispositive motion deadline of November 20, 2009. Additionally, on January 15, 2009, this Court entered an Order Regarding Discovery (Doc. 24) informing the parties of the Court's procedure for resolving discovery disputes.[3]

Discovery disputes among the parties began surfacing almost immediately after the issuance of the scheduling order. On January 23, 2009, eight days after the entry of the scheduling order, the EEOC and Alford filed a Joint Motion to Quash Defendant Aaron Rents, Inc.'s First Notice of Subpoenas for Production of Documents and Things to Non-Parties and a Joint Motion for Protective Order (Doc. 32). On January 29, 2009, the Court entered an order quashing the subpoenas and scheduling an in-person hearing for February 19, 2009, to address the protective order and the reissuance of subpoenas. Prior to the hearing on February 6, 2009, thirteen days

---

[2]A trial date that is now impossible to reach because of the manner in which discovery has been conducted.

[3]The order directs the party raising the discovery dispute to contact the Court to schedule a telephonic discovery dispute conference at which the Court will hear the dispute informally before directing the parties to file motions. The order also directs the parties to this Court's webpage on the Court's website for additional information.

before the scheduled hearing, without leave of court, Aaron Rents filed a six-page motion and a twenty-four-page memorandum of law requesting that the Court reconsider its "placeholder" order quashing the subpoenas. Presumably this motion and memorandum were paid for by Aaron Rents. This Court will not presume to tell attorneys how to litigate their cases, however, the issues raised were the same issues the Court had already determined to hear at the February 19 hearing. Whether this filing was necessary is up to Aaron Rents to determine. It should be noted, however, that the Court did not request motions or legal memoranda on the issues that were to be argued at the hearing, and did not grant leave to Aaron Rents to file the motion. Indeed, it is noted that at the February 19 hearing, the Court asked for briefs, which Aaron Rents then resubmitted (Docs. 50 and 51).

Another discovery dispute arose on May 23, 2009, when Alford filed a Motion to Quash the Depositions of Ashley Alford and Belynda Woods (Doc. 53). On that same day Aaron Rents filed a response to that motion (Doc. 54). On May 26, 2009, based on representations to the Court by Aaron Rents that the dispute had been resolved, the Court denied the Motion to Quash (Doc. 55). On May 29, 2009, EEOC and Alford filed a Joint Motion to Compel (Doc. 56), which the Court struck for failure to follow the procedures set forth in the Order Regarding Discovery (Doc. 24). The Court set a telephonic discovery dispute conference for June 8, 2009. At that conference, the Court ordered Aaron Rents to produce any and all documents regarding complaints against Defendant Richard Moore and Brad Martin during their tenure at Aaron Rents (Doc. 59). The Court also scheduled an in-person scheduling conference for June 19, 2009, in the East St. Louis

Courthouse to help the parties create a deposition schedule.[4] After that hearing the Court entered an Amended Scheduling and Discovery Order resolving other outstanding discovery disputes and setting a deposition schedule (Doc. 61).

On June 24, Aaron Rents filed, without leave of court, a Motion for Order to Issue Ruling permitting the reissuance of the previously-quashed subpoenas (Doc. 62). The Court scheduled a telephonic discovery dispute conference for June 26, 2009 (Doc. 65). At that conference the Court resolved eight outstanding disputes (Doc. 67). On July 13, 2009, Aaron Rents filed a motion asking the District Court to reconsider the discovery rulings made at the June 26 conference by the undersigned Magistrate Judge (Doc. 68). Alford filed a Response (Doc.71) and Memorandum in Opposition (Doc. 72) on July 23, 2009.[5] The District Court (Judge Michael J. Reagan) denied the motion to reconsider on July 30, 2009 (Doc. 75).

During this same period, the parties raised additional discovery disputes, for which the Court scheduled an in-person discovery dispute conference for August 3, 2009, at the East St. Louis Courthouse, to be held prior to the depositions scheduled in the Courthouse on that day (Doc. 70). The August 3 conference was very contentious. The Court was not able to conclude the conference prior to the scheduled deposition, therefore the conference was continued. The Court also set a telephonic discovery dispute conference for August 5, 2009, to determine whether, in light of the many outstanding discovery disputes, the current deposition schedule could be maintained (Doc. 78).

---

[4] The lawyers could not even agree as to when and where to take depositions. The Court scheduled the depositions, even going so far as to have them conducted at the courthouse just to get the parties' attention that their conduct was "not the norm."

[5]The Court notes that Aaron Rents filed a Reply to the Reponse to the Motion, even though reply briefs are disfavored under the Federal Rules of Civil Procedure.

At that conference the Court determined that the schedule for depositions put in place by the Court should proceed (Doc.79).

The Court set an in-person discovery dispute for August 24, 2009, to determine two issues: 1) Defendant's use of privileged e-mail inadvertently disclosed by the EEOC, and 2) Plaintiff-Intervenor's request to talk to callers to Aaron Rents's sexual harassment hotline.  Due to the time constraints created by the deposition scheduled in the Courthouse that day, the telephonic conference was cancelled and rescheduled for an in-person discovery dispute conference on September 15, 2009.

Prior to the September 15, 2009, hearing, Defendants filed multiple motions: Motion for Extension of Time to Complete the Deposition of Plaintiff-Intervenor Ashley Alford, for an Order Instructing Plaintiff-Intervenor's Counsel to Not Make Coaching Objections, and to Compel Responses to Prior Deposition Questioning (Doc. 84); Motion for Protective Order (Doc. 87); Motion for Protective Order Precluding Depositions of R. Charles Loudermilk, Sr. and Robert C. Loudermilk, Jr. (Doc. 89); Motion for Protective Order Precluding J. Bruce Launey's Deposition (Doc.91);[6] Motion for Extension of Time to Complete the Deposition of Belynda Woods and for an Order Requiring Plaintiff-Intervenor's Counsel to Cease Engaging in Tactics to Delay and Impede the Taking of Depositions in this Case (Doc. 95), and a Motion for Order to Admonish Plaintiff-Intervenor's Counsel to Allow All Deponents to Complete Their Answers Without Interruption, and Against Taking Photographs in Connection with a Judicial Proceeding by Aaron Rents, Inc. (Doc. 106).  Alford responded to these motions (Doc. 109).

---

[6] Docs. 87, 89, and 91 were granted at the hearing on September 15, 2009 and are no longer before the Court (Doc. 93).

On September 11, 2009, the Court, in another attempt to bring to counsels' attention that their conduct was beyond the pale, ordered each attorney of record in this case to file with the Clerk of the Court an affidavit, sworn under penalty of perjury, that stated his or her current status with the District Court for the Southern District of Illinois, and a listing and statement of his or her current status with all other bars of which the respective attorney is a licensed member. The Court ordered these affidavits to be filed prior to the September 15 discovery dispute conference. To their credit, all attorneys complied (Docs. 97, 98, 99, 100, 101, 102, 103, 104, 105 and 110).

The in-person dispute conference was held on September 15, 2009. It was the Court's intention to clear all of the outstanding discovery issues in this case. Unfortunately, due to the argumentative tenor and tone of the motions and proceeding, and to the sheer number of disputes raised by the parties, the Court took most of the issues under advisement and granted EEOC and Alford additional time to file motions on the unargued disputes. The Court stayed additional discovery in the action until further order of the Court (Doc. 114).

A word about the depositions is in order. As noted above, because the parties could not agree on either time or place for some of the depositions in the case, the Court provided space in the East St. Louis Federal Courthouse for the parties to conduct the depositions of Plaintiff-Intervenor Ashley Alford, Belynda Woods, Damien Daniels, James Woods, Richard Moore, Brad Martin, Joe Skortz, Harold Emde (Doc. 61). The depositions of Ashley Alford, and Belynda Woods, Alford's mother, were particularly contentious. During both depositions the undersigned was summoned multiple times to rule on objections raised during the depositions. At each appearance, the parties were reminded that they were to make their objections and then allow the witnesses to answer. Speaking objections and multiple objections for relevance (which objection the Court had ruled was

ongoing), would not be tolerated. Despite the Court's attempts to direct the parties to follow the rules in conducting the depositions, the undersigned had to take time out of his schedule, including during recesses in two jury trials held that summer, to resolve the repetitious, ongoing arguments of the parties. The deposition of Belynda Woods became so combative that the undersigned personally observed the deposition for approximately an hour in an effort to get the parties to conduct themselves professionally. The undersigned's appearance at the depositions did not significantly alter the unprofessional behavior of counsel for either side.

## DISCUSSION

The Court has never experienced a more argumentative course of discovery in civil litigation. Because the parties have not been able to agree, the Court has been required to direct discovery down to the finest detail, including setting the dates and times for every deposition in the action, finding space in the East St. Louis Courthouse for the parties to conduct depositions, availing itself for immediate rulings on objections made in deposition, and going so far as to sit in on a deposition when the repeated requests for immediate rulings became so frequent that it no longer made sense for the Judge to continue leaving chambers to appear in the deposition room. Unfortunately, the Court's accommodation did not inspire the parties to better behavior. The deposition transcripts, which the Court ordered the parties to produce in full for *in camera* review, are replete with petty bickering, inappropriate objections, and harassing and intimidating lines of questioning. In short, none of the parties acted with the professionalism expected of them as officers of the Court.

***Furthermore, this litigation has cost and will cost the parties more than they should have to pay.*** This Court has spent an inordinate amount of time and resources marshaling seasoned attorneys through the discovery process, a process not designed to handle non-compliance or

unreasonable application. This case contains both.

Despite the Court's policy of dealing with discovery disputes informally, it became clear early in the case that the parties' conflicts were so numerous and the positions of the parties so entrenched that informal resolution was not possible. Thus, the Court directed the parties to file written motions regarding any unresolved discovery dispute. The written motions and supporting memoranda filed by both sides are belligerent in tone. Further, each side attempts to place blame for the quarrelsome nature of discovery entirely on opposing counsel without accepting any personal responsibility for misconduct.[7]

Having arrived at the overwhelming task of dealing with requests by the parties to, essentially, review every discovery request and document produced in discovery for appropriateness of objections, sufficiency of production, manner of production, and for privilege determinations, the Court is faced with weeks of work devoted to discovery in only one of its approximately 300 cases. Never before has the Court been asked for such extensive review at the discovery stage; never before has the conduct of parties required such review.

In order to manage discovery in the case so that it may move forward expeditiously for trial, the Court, as explained more fully below, orders the severance of issues for trial, and notifies the parties of its intention to appoint a pretrial master pursuant to Fed. R. Civ. P. 53.

*Severance of Issues for Trial*

The Court orders that the claims of the Plaintiff EEOC and of Plaintiff-Intervenor Ashley Alford be severed for trial. Under Federal Rule of Civil Procedure 21, the Court has broad

---

[7]The Court is particularly dismayed by the excessive use of exclamation points in the supporting legal memoranda.

discretion to sever claims in a case, as long as there exists "a discrete and separate claim." *See Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). Trial courts should not sever claims under Rule 21 to separate an "essentially unitary problem." *Id.* In cases involving employment discrimination claims under Title VII, such as the claim here, federal courts recognize the EEOC has a independent interest to "eradicate employment discrimination on behalf of the public interest." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 455 (6th Cir. 1999); *see also General Telephone Company of the Northwest Inc. v. EEOC*, 446 U.S. 318, 325 (1980) (recognizing congressional intent that EEOC is "guided" by an "overriding public interest in equal employment opportunity"). The Sixth Circuit has observed that "the EEOC's obligation to secure the public interest may well conflict with individual interests." *Frank's Nursery*, 177 F.3d at 458. "The EEOC's interest in eliminating workplace discrimination is distinguishable from the private cause of action Title VII affords individuals to personally pursue discrimination claims." *Hughes v. CACI, Inc.*, 384 F.Supp.2d 89, 99 (D.D.C. 2005). As such, the EEOC may pursue discrimination claims against an employer independently from those of the aggrieved employee. *Id.*

The Court believes that in this case the public interests of the EEOC and the private interests of intervening Plaintiff Ashley Alford are independent of each other, and may be conflicting in the future, if they are not already. Accordingly, the claims brought by the EEOC are **SEVERED** for purposes of trial from the claims raised individually by Ashley Alford.

*Appointment of Pretrial Master*

The Court further notifies the parties that it intends to appoint a pretrial master to review all disputed discovery in the action, to recommend disposition of all pending discovery motions, and to recommend sanctions, if appropriate. Regarding pending discovery disputes, the costs of the

master will be borne equally by the EEOC, Ashley Alford, and Aaron Rents.[8] Regarding future discovery disputes, the pretrial master may assign costs to the party engaging in misconduct under the Federal Rules of Civil Procedure. The Court intends to assess the costs of the pretrial master based upon the prevailing hourly rate for senior attorneys in the St. Louis metropolitan area.

Federal Rule of Civil Procedure 53 authorizes a district court to appoint a master to "address pretrial and post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C). The rule, which previously required exceptional circumstances for appointment of a master, was significantly revised in 2003, to recognize the "changing practices" in using special masters, and to "confirm the authority to appoint–and to regulate the use of–pretrial masters." Fed R. Civ. P. 53 advisory committee's notes. As relevant here, the committee reported that "courts have gained experience with masters appointed to perform a variety of pretrial and post-trial functions." *Id*. *See also Cordoza v. Pacific States Steel Corp.*, 320 F.3d 989, 995 (9th Cir. 2003) (special masters may "perform a broad range of judicial functions," including supervising discovery). Among the duties a special master may perform, the advisory committee specifically mentioned "reviewing discovery documents for privilege." Fed. R. Civ. P. 53 advisory committee's notes.

The Court believes, in its discretion, that the appointment of a special master is appropriate in this case. The Court has identified Professor Bill Dorothy, Professor of Ethics and Practice at Washington University in St. Louis. Absent reasonable objection, the Court intends to appoint Professor Dorothy as a pretrial master in this case.

Pursuant to Rule 53(b)(1), the Court grants the parties ten days from the entry of this order,

---

[8]Defendant Richard Moore will not be required to bear the costs of the pretrial master.

that is until **December 10, 2009**, to be heard in writing regarding the appointment of a special master.

Pursuant to Rule 53(b)(2), the Court may not issue the order appointing the master until the master "files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455." Accordingly, Professor Bill Dorothy shall file with the court an affidavit disclosing whether there is any ground for his disqualification under 28 U.S.C. § 455 within ten days from the entry of this order, that is by **December 10, 2009**.

After the parties have been heard and Professor Dorothy has filed his affidavit, the Court will issue its order pursuant to Rule 53(b) specifying the duties and responsibilities of the master.

*Client Notification*

The attorneys of record are ordered to serve a copy of this order on their clients: the EEOC Regional Counsel, Ashley Alford, Aaron Rents General Counsel, Richard Moore, and Brad Martin. Within ten days of the issuance of this order, that is by **December 10, 2009**, the parties shall file an acknowledgment with the Court indicating that such service was made, and the date upon which, and the manner in which it was served.

## CONCLUSION

Based on all the foregoing, the claims of the Equal Employment Opportunity Commission are **SEVERED**, for purposes of trial, from those of the Plaintiff-Intervenor Ashley Alford. The parties are granted until **December 10, 2009**, to be heard in writing on the appointment of a pretrial master pursuant to Fed. R. Civ. P. 53, and to file with the Court an acknowledgment that this order was served upon their respective clients. By December 10, 2009, Professor Bill Dorothy shall file with the Court and affidavit disclosing whether there is any ground for his disqualification under 28

U.S.C. § 455.  The Clerk is **DIRECTED** to forward a copy of this order to Professor Bill Dorothy, Washington University School of Law, One Brookings Drive, St. Louis, Missouri, 63130.

**IT IS SO ORDERED.**

**DATED:  November 24, 2009**

*s/ Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**
