**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ASHLEY ALFORD, ) | |
| ) | |
|     Plaintiff-Intervenor, ) | |
| v. ) | Case No. 08-cv-0683-MJR |
| ) | |
| AARON RENTS, INC., d/b/a AARON ) | |
| SALES AND LEASE OWNERSHIP, ) | |
| RICHARD MOORE and BRAD MARKIN, ) | |
| ) | |
|     Defendants. ) | |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

    **I.**    **Introduction**

In September 2008, the Equal Employment Opportunity Commission ("EEOC") initiated this employment discrimination action against Aaron Rents, Inc., ("Aarons"), alleging sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. Ashley Alford was granted leave to intervene in October 2008. Alford added claims of assault, battery, various theories of negligence, intentional infliction of emotional distress, retaliation and sexual harassment against Aarons, Richard Moore and Brad Markin. On December 29, 2009, the Court entered a consent decree, which resolved the issues between Aarons and the EEOC, and the EEOC was terminated as a Plaintiff herein.

On January 10, 2010, United States Magistrate Judge Donald G. Wilkerson appointed Professor Bill Dorothy as Special Master to review all disputed discovery in this action, to recommend disposition of all pending discovery motions and to recommend sanctions, if appropriate. The pending discovery motions upon which Professor Dorothy was to make

1

recommendations comprised the following:

    1. Defendant Aaron Rents, Inc.'s Motion for Time to Complete the Deposition of Plaintiff-Intervenor Ashley Alford, for an Order Instructing Plaintiff-Intervenor's Counsel to Not Make Coaching Objections, and to Compel Responses to Prior Deposition Questioning (Doc. 84);

    2. Defendant Aaron Rents, Inc.'s Motion for Extension of Time to Complete the Deposition of Belynda Woods and for an Order Requiring Plaintiff-Intervenor's Counsel to Cease Engaging in Tactics to Delay and Impede the Taking of Depositions in this Case (Doc. 95);

    3. Defendant Aaron Rents, Inc.'s Motion for Order to Admonish Plaintiff-Intervenor's Counsel to Allow All Deponents to Complete Their Answers Without Interruption, and Against Taking Photographs in Connection with a Judicial Proceeding (Doc. 106);

    4. Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's First Requests for Production of Documents to Brad Martin (Doc.124), including a complete privilege log;

    5. Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's Second Request for Production to Aaron Rents, Inc. (Doc. 125);

    6. Plaintiff-Intervenor's Motion to Compel Responses to Plaintiff-Intervenor's Third Requests for Production to Aaron Rents (Doc. 126);

    7. Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Allow Plaintiffs to Contact Harassment Hotline Callers (Doc. 127);

    8. Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Compel Production of All Electronic Images from Security Cameras (Doc. 129);

    9. Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Require Aaron Rents and Brad Martin to Produce Privilege Logs that satisfy Rule 26 (Doc. 130);

    10. Plaintiff EEOC and Plaintiff-Intervenor Ashley Alford's Joint Motion to Compel Document Production Compliant with Rule 34 (Doc. 132);

    11. Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's Fourth Requests for Production (Doc. 134);

    12. Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's Fifth Requests for Production (Doc. 135);

    13. Plaintiff-Intervenor Ashley Alford's Motion to Compel Responses to Plaintiff-Intervenor's First and Second Requests for Production of Documents to Richard Moore (Doc. 136);

14. Plaintiff-Intervenor Ashley Alford's Motions to Strike Declarations of Counsel for Defendants (Doc. 142 and 158); and

15. Plaintiff-Intervenor Ashley Alford's Motion to Strike Declarations of Vanessa Adams (Doc. 156).

Professor Dorothy prepared a report dated March 7, 2005, which was reviewed by Judge Wilkerson. As a result of this review, Judge Wilkerson recommends in his July 22 Report and Recommendations that this Court adopt Professor Dorothy's recommendation that Aaron's counsel, Alisa Cleek, and Alford's counsel, Judy Cates, each personally pay a $3,750.00 sanction to the Clerk of Court of the Southern District of Illinois, and that these funds be placed into the District Court Fund to be used to benefit the administration of justice in this district.

## II. Standard of Review

In acting on a Special Master's report, a district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge, or recommit the matter to the magistrate. *See* **Fed.R.Civ.P. 53(f)(1) (a court "may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse or resubmit to the master with instructions."); SDIL-LR 73.1(b) (The district Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge" and "may also to receive further evidence, recall witnesses, or recommit the matter to the Magistrate Judge with instructions")**.

## III. Analysis

As a preliminary matter, the Court must address whether procedural due process requires an in-person hearing before deciding the issue of sanctions. "The essential requirements

of due process ... are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." ***Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546 (1985)(citation omitted)**. The Court concludes that the requirements of due process have been satisfied in that the parties were accorded an opportunity to respond and have done so. This matter is not so complex that it cannot be decided on the parties' submissions and the written record before the Court. The parties are not also entitled to an in-person hearing.

"A district court has inherent power 'to fashion an appropriate sanction for conduct which abuses the judicial process.'" ***Salmeron v. Enterprise Recovery Systems, Inc.,* 579 F.3d 787, 793 (7th Cir. 2009) (quoting *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-45 (1991))**. "Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith." ***Id.* (citing *Maynard v. Nygren,* 332 F.3d 462, 470-71 (7th Cir. 2003))**.

Rule 37 of the Federal Rules of Civil Procedure addresses a litigant's failure to comply with discovery requirements. The Rule "provides for the imposition of sanctions against a party that fails to make disclosure or cooperate in discovery." Under this Rule, the Court may impose sanctions where a party engages in abusive and obstructive discovery tactics by failing to properly respond to discovery requests in any way. The Federal Rules give ample notice to litigants regarding how to properly conduct themselves. Furthermore, as both Ms. Cleek and Ms. Cates point out, they are veteran attorneys. The discovery disclosure system is designed to operate insofar as possible without judicial

intervention; thus, issuance of a court order in the first instance should be unnecessary - much less the degree of intervention required to resolve the 15 motions set forth above. And, while these motions represent more than the tip of the iceberg, the record reveals that *prior to* the filing of these motions, 14 discovery-related motions and objections had been filed in approximately eight months, necessitating the Court's setting no fewer than eight discovery dispute conferences in that same period. In sum, it appears that the parties embarked upon a course entailing a conscious effort to maximize litigation and to make certain that the litigation was as time-consuming, difficult, unpleasant, and expensive as possible. No Court should have to put up with such actions.

The attorneys also failed to adhere to the Illinois Rules of Professional Conduct, including the following:

> **Rule 3.2 Expediting Litigation**
>
> A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.
>
> **Rule 3.3 Conduct Before a Tribunal**
> (a) In appearing in a professional capacity before a tribunal, a lawyer shall not:
> ... (11) refuse to accede to reasonable requests of opposing counsel that do not prejudice the rights of the client....
>
> **Rule 8.4 Misconduct**
> (a) A lawyer shall not:
> ... (5) engage in conduct that is prejudicial to the administration of justice....

The record confirms Professor Dorothy's findings that counsel failed to heed Judge Wilkerson's directives to observe appropriate questioning techniques during depositions

and, in one exchange, had to be admonished by the Judge, "Just a minute. Just a minute. When I'm here, I'm in charge. Okay?" Equally, counsel ignored Judge Wilkerson's admonitions to stop accusation-laced, uncivil correspondence. Lawyers have a duty to adhere to ethical strictures regardless of the perceived transgressions of opposing counsel. These specific instances and the general air of incivility, indeed hostility, were prejudicial to the administration of justice and warrant sanctions.

The Court declines the parties' invitation to examine this matter under a microscope. The big picture is perfectly adequate to inform the Court's understanding. Counsel's apologies to the Court fall within the classic, "I'm sorry, BUT..." mode, with "but" followed by all the explanations of and excuses for why counsel is not really to blame and has not engaged in any misconduct. This case is actually a straightforward employment discrimination case of which the undersigned Judge has seen scores. However, never in such cases has this Judge seen such a scorched-earth approach to discovery and such misuse and abuse of Court resources. Indeed, upon review of what Professor Dorothy denominated "the bathroom argument," the Court confesses itself amazed that counsel were not too embarrassed by having such a dispute on the record to persist with their contentious ways.

The multiplicity of motions detailed above, the fact that Judge Wilkerson felt it necessary to personally oversee depositions because of the rancorous behavior of counsel and the need to appoint a Special Master to decide discovery disputes (the rarity of which can scarcely be exaggerated) provide more than sufficient evidence that the parties

engaged in conduct violative of Rule 37 and the Illinois Rules of Professional Responsibility as well as sanctionable under this Court's inherent power.

What is needed is a monetary penalty in an amount sufficient to impress upon counsel that they are guilty of professional misconduct and to motivate them to avoid sanctionable conduct in the future. The Court finds that the sanctions recommended by Professor Dorothy and Judge Wilkerson, while nugatory when contrasted with the disruption that the lawyers have caused while behaving badly, are adequate to meet this need. Accordingly, the Court **ADOPTS in its entirety** Magistrate Judge Wilkerson's Report and Recommendation (Doc. 196). Ms. Cleek and Ms. Cates are each fined the sum of $3,750 (a total of $7,500.00), to be paid by them individually, without reimbursement from any source, such as their clients or their law firms. The fines shall be paid to the Clerk of the Court by November 3, 2010.

**IT IS SO ORDERED.**

**DATED this 20th day of October, 2010**

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**