IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| ASHLEY ALFORD, ) | |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 3:08-cv-00683-MJR-DGW |
| AARON RENTS, INC., d/b/a, AARON ) | |
| SALES AND LEASE OWNERSHIP; ) | |
| RICHARD MOORE; and BRAD MARTIN, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT AARON RENTS, INC.'S RESPONSE TO
PLAINTIFF ASHLEY ALFORD'S MOTION IN LIMINE**

COMES NOW, Defendant Aaron Rents, Inc. ("Aaron Rents") and files this Response to Plaintiff-Intervenor Ashley Alford's Motion in Limine [Doc. 279.] Plaintiff-Intervenor Ashley Alford ("Plaintiff") moves to exclude Dr. Althoff's testimony regarding her prior psychiatric history, drug use, adolescent behavior, abortions and miscarriages, criminal record and her relationship with her first husband. Notably, Plaintiff makes this request even though her own expert mentions these same factors in his expert report. For the reasons set forth below, Plaintiff's arguments are without merit and her Motion should be denied.

**I.     RELEVANT FACTUAL BACKGROUND**

Plaintiff's asserts 12 counts – Count I (Common Law Assault); Count II (Common Law Battery); Count III (Negligent Hiring); Count IV (Negligent Retention); Count V (Negligent Supervision); Count VI (Negligent Investigating of a Sexual Harassment Claim); Count VII (Negligent Repair); Count VIII (Intentional Infliction of Emotional Distress); Count IX (Intentional Infliction of Emotional Distress); Count X (Intentional Infliction of Emotional

Distress); Count XI (Retaliation) – arising out of her employment with Aaron Rents.  [Doc. 7.][1/] Plaintiff was hired by Aaron Rents on October 31, 2005, and claims that, almost immediately thereafter, she was subjected to various acts of sexual harassment by her manager, Richard Moore, continuing through October 12, 2006.

In support of her various state-law claims, Plaintiff alleges that she "has suffered severe emotional distress" and "has experienced severe mental anguish, depression, [and] emotional distress … and may continue to suffer the same in the future." [Doc. 7, ¶¶ 7, 60, 68, 84, 95, 108, 122, 144, 167,189.]  Plaintiff further alleges that she "has suffered a loss of enjoyment of a normal life as a consequence of her emotional injuries."  [Doc. 7, ¶¶ 7, 60, 68, 84, 95, 108, 122, 144, 167, 189.]  In support of her Title VII claim of retaliation, Plaintiff similarly alleges that she has suffered "mental anguish" and "distress."  [Doc. 7, ¶ 201.] In the EEOC's Complaint for Title VII sexual harassment, in which Plaintiff intervened, Plaintiff further joined in a claim for damages for "emotional distress, pain, suffering, inconvenience, loss of enjoyment of life, loss of reputation, and humiliation . . . ." [Doc. 2, ¶ 10.D.]

During her Rule 35 mental examination, Plaintiff stated that her job at Aaron Rents had been "a dream come true" and that it was "a perfect life and then everything fell through."  [See Doc. 280, Exhibit B, which is the Forensic Psychological Evaluation of Michael E. Althoff, Ph.D., p. 21.]  As discussed below, however, Plaintiff has had a number of stressors in her life – both before, during, and after her employment with Aaron Rents – all of which constitute relevant evidence to the elements of her various claims, as well as her claims for compensatory damages for alleged emotional distress.

---

[1/]  One of her three intentional infliction of emotional distress claims, which was against Defendant Brad Martin in his individual capacity, was dismissed by the Court on March 25, 2011. [See Doc. 277].

## II.     ARGUMENT AND CITATION TO AUTHORITY

### A.     Plaintiff's History of Psychiatric Issues.

Plaintiff seeks to bar Aaron Rents from offering evidence of her psychiatric history prior to Moore's alleged conduct. [Doc. 279, pp. 1-2.] Plaintiff asserts that such evidence is irrelevant and that "its probative value, if any, is substantially outweighed by its unduly prejudicial effect." [Doc. 279, p. 1.] Plaintiff's Motion is based on three principal arguments.

First, Plaintiff cites to Judge Herndon's Order in EEOC v. Wal-Mart Stores, Inc., No. 99-106-DRH, 2000 U.S. Dist. LEXIS 13342, at **7-8 (S.D. Ill. Mar. 10, 2000), a Title VII sexual harassment and retaliation case in which he purportedly granted the EEOC's motion in limine to bar as irrelevant evidence of the charging party's other medical complaints, conditions, injuries, and treatment – notwithstanding her claim of emotional distress damages. [Doc. 279, p. 2.] It should be noted that Wal-Mart had responded to the EEOC's motions by stating only that an in limine ruling on that issue "would be premature and that the Court [would be] better equipped to determine the admissibility of this evidence during trial." EEOC v. Wal-Mart Stores, Inc., No. 99-106-DRH, 2000 U.S. Dist. LEXIS 13342, at *6. Indeed, Judge Herndon expressly chided Wal-Mart for "tak[ing] lightly" its obligation to respond to and for "its failure to properly address" the EEOC's motions generally. Id. at *3. Even then, however, Judge Herndon only granted the EEOC's motion "subject to a showing by [Wal-Mart] outside the presence of the jury that a causal connection exists between introducing [the employee's] medical complaints, conditions, injuries and treatments and the arguments made by the EEOC in connection with this claim." Id. at *6. Therefore, Judge Herndon's Order does not support Plaintiff's argument that such evidence is irrelevant or even inadmissible as overly prejudicial.

Second, Plaintiff asserts that her retained expert witness, Dr. Daniel J. Cuneo, "expressly determined that [her] prior psychiatric history in any way [sic] caused her Post Traumatic Stress Disorder." [Doc. 279, p. 2.] Dr. Cuneo nevertheless acknowledged that "[t]o best understand [Plaintiff], one needs to view not only her mental status and psychological testing, but also to view her psychological functioning in the light of her past history." [See Report of Daniel J. Cuneo, Ph. D., p. 6.][2/] Dr. Cuneo made a diagnosis of "Cannabis Abuse by History" and "Alcohol Abuse by History," but as stated in Plaintiff's Motion, discounted both of them entirely as possible causes of any emotional distress. Aaron Rents, however, is entitled to challenge those conclusions.

As noted, Plaintiff claims a specific psychiatric injury – post-traumatic stress disorder, and possibly depression and bi-polar disorder as well – and not mere "garden variety" emotional distress – although it is not clear that the Seventh Circuit distinguishes between two. See Loch v. Bd. Of Educ. Of Edwardsville Community Sch. Dist., Civil No. 06-017-MJR, 2007 WL 3037285, at *2 (S.D. Ill. Oct. 17, 2007) (citing Doe v. Oberweis Dairy, 456 F.3d 704, 718 (7th Cir. 2006)). This Circuit and its District Courts, however, have recognized that numerous factors, including, inter alia, preexisting and coexisting conditions, as well as other stressors, may be pertinent to the issue of emotional distress damages.[3/] A plaintiff litigant claiming

---

[2/]   Notably, Plaintiff cites to Dr. Cuneo's report but does not attach it to any of her Motions in Limine. Given the sensitive nature of the report, Defendant has not attached Dr. Cuneo's report, but will submit it to the Court if necessary upon request. Plaintiff did attach Dr. Althoff's report to one of her Motions in Limine; thus, as set forth herein, Defendant merely refers to it as Exhibit B to Docket No. 280, rather than filing it on the public record as an exhibit to this Response.

[3/]   See Merriweather v. Family Dollar Stores of Indiana, Inc., 103 F.3d 576, 581 (7th Cir. 1996) (reducing award of emotional-distress damages where other factors – including the death of the plaintiff's father, being evicted from her apartment, and being unable to find a suitable job – also affected her emotional state); EEOC v. Simply Storage Mgmt., LLC, 270

emotional distress (and her expert) logically may be motivated to minimize past difficulties or problematic behaviors, such as substance abuse; nevertheless, as recognized by both expert reports here, historical factors, including marital and relationship history, substance abuse history, history of treatment for psychological problems, and a history of suicide or self-mutilating acts, may be relevant to an assessment of a plaintiff's mental status.  When there is evidence of such other difficulties or behavior, a jury should be permitted to consider that whole mix of factors, including those that <u>may</u> be unfavorable to the plaintiff or inconsistent with the assertion that the defendants are the cause – sole, proximate or otherwise – of any alleged emotional distress.

Indeed, all of the factors that Plaintiff seeks to bar evidence of were expressly considered – albeit then discounted – by her own expert witness.  Aaron Rents may challenge the credibility of or weight to be given Dr. Cuneo's testimony, including that it ignores alternative stressors and is overly solicitous of Plaintiff's version of the events.  <u>Alberts v. Wickes Lumber Co.</u>, No. 93 C 4397, 1995 WL 557473, at *1-2 (N.D. Ill. Sept. 15, 1995) (citing Fed. R. Evid. 104(e)).  In <u>Alberts</u>, the district court denied the plaintiff's motion and held that at trial the defendant could offer expert witness testimony attacking the plaintiff's expert witness's conclusion that the plaintiff suffered from a panic disorder caused by sexual harassment and retaliatory conduct endured during her employment, on the grounds that the plaintiff's expert had "failed to consider

---

F.R.D. 430, 435 (S.D. Ind. 2010) ("information that evidences other stressors that could have produced the alleged emotional distress is also relevant"); <u>Grant v. Coken Co., Inc.</u>, No. 01 C 6400, 2005 WL 300388, at *6 (N.D. Ill. Feb. 1, 2005) (considering "that some of [the plaintiff's] emotional distress may have been caused in part by factors outside of the sexual harassment, including problems in her relationships with her family and boyfriend and ongoing illness" in determining compensatory damages for sexual harassment); <u>Spina v. Forest Preserve Dist. Of Cook County</u>, 207 F. Supp. 764, 774 (N.D. Ill. 2002) (noting that "there were other stressors in Plaintiff's life at the time of the alleged harassment" in determining the appropriate amount of damages).

other possible causes of [the plaintiff's] condition and because it appeared that [the plaintiff's] expert] accepted [the plaintiff's] version of events as true." Id. at *3.

Plaintiff began drinking alcohol at age 12 (Pl. Dep. III, p. 26), and Dr. Cuneo diagnosed her with "Alcohol Abuse by History."[4/]  [See Report of Dr. Daniel J. Cuneo, p. 10.] Nevertheless, Dr. Cuneo sought to minimize the same as relating to "past alcohol abuse," stating that Plaintiff had "not drunk heavily since she was 19." [See Report of Dr. Daniel J. Cuneo, p. 10.] Plaintiff, however, was only 20 or 21 years old during the time of the conduct alleged here. Therefore, even accepting Dr. Cuneo's findings – based solely on Plaintiff's own representations – regarding when Plaintiff quit drinking "heavily," her alcohol abuse predated the events at issue here by only one or two years. (Pl. Dep. III, p. 26.)

In addition, Plaintiff started taking illegal drugs when she was 13 years old. (Pl. Dep. III, p. 26.) Dr. Cuneo rendered a diagnosis of "Cannabis Abuse by History," but again sought to minimize that diagnosis based on representations made to him by Plaintiff that she had "never used marijuana heavily," had "last smoked marijuana over four years ago," and "had stopped when she found out that she had become pregnant with her daughter." [See Report of Dr. Daniel J. Cuneo, pp. 10, 12.] Yet, when Plaintiff was asked at her deposition how often she had smoked marijuana, she responded "That's like asking me how many times I've drank a beer. I don't know. I have no idea." (Pl. Dep. III, p. 22.) Moreover, although she could not remember using marijuana during the last four years, she also could not deny doing so. (Pl. Dep. III, p. 22.) Indeed, Plaintiff testified that it was possible that she had used marijuana during her employment with Aaron Rents, and further clarified that it was <u>after</u> the birth of her daughter when she stopped taking illegal drugs. (Pl. Dep. III, pp. 22, 29.) Indeed, she gave birth to her daughter

---

[4/] The pages cited to from the deposition of Plaintiff are attached hereto as Exhibit 1.

while she was employed with Aarons and during the time period that she claims she was being subjected to sexual harassment. (Pl. Dep. III, p.19.)

Third, citing page 42 of the report prepared by Aaron Rents' retained expert, Dr. Michael E. Althoff, Plaintiff asserts that he "was not able to determine that her prior psychiatric history <u>in any way</u> caused her Post Traumatic Stress Disorder." [Doc. 279, p. 2 (emphasis supplied).] This is nothing less than a willful misrepresentation of Dr. Althoff's report. Pages 34-42 of Dr. Althoff's report discuss in detail Plaintiff's preexisting conditions and factors – as well as coexisting factors – including, among others, depression, self-mutilation, apparent bipolar disorder diagnosis, and alcohol and other drug abuse, and his conclusions based upon the same.[5/]

Moreover, in addition to testifying as to his own evaluation of Plaintiff, Dr. Althoff also is permitted to testify as to why Dr. Cuneo's conclusions should not be believed, including Dr. Cuneo's discounting of her prior drug and alcohol abuse. <u>See e.g.</u> <u>Alberts</u>, 1995 WL 557473, at *2 (holding that the defendant's expert psychologist in a sexual harassment case was "performing one of the typical functions of an expert witness, namely, telling the jury why the opposing party's expert should not be believed").

As such, Plaintiff's Motion in Limine to exclude any testimony or other evidence regarding her prior psychiatric history should be denied.

B.  **<u>Plaintiff's Use of Drugs</u>.**

Plaintiff's Motion in Limine also seeks to bar Aaron Rents from offering evidence of Plaintiff's drug use. [Doc. 279, pp. 2-4.] Plaintiff asserts that she smoked marijuana "when she was younger but did not purchase or consume any other illegal drugs," and "has not consumed any illegal drugs since the birth of her daughter in August 2006." [Doc. 279, pp. 2-3.] Plaintiff

---

[5/] Plaintiff originally sought to depose Dr. Althoff, but subsequently withdrew that notice of deposition.

asserts that her drug use may not be used to attack her credibility generally, and that no expert witness has determined that her emotional distress was due to any drug use. [Doc. 279, p. 3.]

As an initial matter, Plaintiff's assertions in support of her motion are false. In fact, Plaintiff testified at her deposition that although she could not remember using marijuana during the last four years, she could not deny doing so. (Pl. Dep. III, p. 22.) Indeed, Plaintiff testified that it was possible that she had used marijuana during her employment with Aaron Rents, and further clarified that it was after the birth of her daughter when she stopped taking illegal drugs. (Pl. Dep. III, pp. 22, 29.) Furthermore, Plaintiff told Dr. Cuneo that she had used psychedelic mushrooms less than a year ago in May 2010, explaining that she and her husband were attending a concert while on a camping trip without their kids. [See Report of Dr. Daniel J. Cuneo, p. 5.]

Moreover, as discussed above, Plaintiff also misrepresents Dr. Althoff's report regarding his consideration of her prior drug use as a preexisting condition. Additionally, Plaintiff's own expert, Dr. Cuneo, also specifically considered Plaintiff's prior drug use in his evaluation – and, indeed, diagnosed her with Cannabis Abuse by History – but opined that it was not the source of her alleged emotional distress. Nevertheless, Aaron Rents is permitted to argue (in reliance upon Dr. Althoff's testimony and other evidence) that Dr. Cuneo's conclusions are not to be believed. See e.g. Alberts, 1995 WL 557473, at *2 (holding that the defendant's expert psychologist in a sexual harassment case was "performing one of the typical functions of an expert witness, namely, telling the jury why the opposing party's expert should not be believed").[6/]  Such evidence presents questions of weight and credibility, not admissibility.

---

[6/] Plaintiff's reliance upon Jarrett v. United States, for the proposition that "a witness's use of drugs may not be used to attack his or her general credibility, but only his or her ability to perceive the underlying events and testify lucidly at the trial" is misplaced. 822 F.2d 1438 (7th

As Dr. Cuneo himself states in his report, "To best understand [Plaintiff], one needs to view not only her mental status and psychological testing, but also to view her psychological functioning in the light of her past history." [See Report of Dr. Daniel J. Cuneo, p. 6.] So too should the jury in this case. Therefore, Plaintiff's Motion in Limine to disallow Aaron Rents' expert from rebutting her own expert's testimony about the impact of her abuse of drugs as it relates to her claim for emotional distress damages should be denied.

C. **Plaintiff's Alcohol Use, Self-Mutilation and Conflict with Her Mother.**

Plaintiff's Motion in Limine further seeks to bar Aaron Rents from offering evidence of "her adolescent history," including "alcohol abuse, self-mutilation and conflict with her mother." [Doc. 279, pp. 4-5.] Plaintiff asserts that such evidence of what she characterizes as "teenage rebellion" is irrelevant and that "its probative value, if any, is substantially outweighed by its unduly prejudicial effect." [Doc. 279, pp. 4-5.]

Plaintiff cites Barclay v. Mercy Hospital Serv.-Iowa Corp., No. C 07-4074-MWB, 2009 WL at 2462296 (N.D. Iowa Aug 12, 2009), in support of her argument. According to Plaintiff, the district court granted the plaintiff Pribil's motion in limine in a sexual harassment case to exclude evidence from her adolescence, including her teenage marriage, pregnancy, infidelity, and divorce, because "'[r]eliance . . . on [this] evidence . . . suggest[s] precisely that it is the salacious quality of this evidence, not its probative value as evidence of pre-existing emotional distress that is the real purpose for offering it.'" [Doc. 279, p. 4, quoting Barclay, 2009 U.S. Dist. LEXIS 70549, at 42-44.]

---

Cir. 1987). Jarrett addressed a collateral attack upon a non-party witness's credibility in a criminal action. Id. at 1446. Plaintiff, of course, is a party whose emotional state is an actual element of certain of her state-law claims, as well as the basis of her compensatory damages claims pursuant to both her federal- and state-law claims.

Barclay, of course, is not binding authority on this Court. But furthermore, as the court there noted, the events that the plaintiff Pribil in Barclay sought to exclude had occurred 20 years earlier – and significant intervening events, including an ongoing 15-year marriage, had occurred in the meantime. 2009 WL at 2462296, at *13. By contrast, in this case, most of the "adolescent conduct" Plaintiff seeks to exclude occurred within a mere 5 years of the events at issue – and Plaintiff has testified (or there is other evidence) that she continued to engage in much of the same conduct (e.g., drug and alcohol abuse) at least up to, and possibly during, her employment with Aaron Rents.

Furthermore, unlike Plaintiff here, the plaintiff Pribil in Barclay did not seek to exclude all evidence that she suffered pre-existing depression "or to exclude other sources of her mental conditions, including childhood abuse and neglect, sexual abuse by her mother's boyfriend, or battering and terrorism by her first husband, all of which [were] also indicated in her expert's report." Id. at *14. The court in Barclay held that the defendants therefore had "several other avenues to address pre-existing sources of plaintiff Pribil's emotional distress." Id.

By contrast, and as amply demonstrated by her motions in limine as a whole, Plaintiff seeks to close off all such avenues for consideration by the jury, and to exclude altogether any evidence of pre-existing sources that may be viewed as unfavorable to her or inconsistent with her assertion that the defendants are the cause – sole, proximate or otherwise – of her alleged emotional distress.

Finally, as discussed above, Plaintiff's reliance upon page 42 of Dr. Althoff's report in support of her argument is a shameful misrepresentation of his report. Accordingly, Plaintiff's Motion in Limine as it relates to her use of alcohol, self-mutilation that she claims was a result of the alcohol use, and problems with her mother, should be denied.

D.     **Plaintiff's Abortion and Miscarriages.**

Plaintiff's Motion in Limine seeks to bar Aaron Rents from offering any evidence of an abortion that she had at age 17, as well as 5 miscarriages. [Doc. 279, pp. 5-6.] Plaintiff contends that such evidence is irrelevant and that "its probative value, if any, is substantially outweighed by its unduly prejudicial effect." [Doc. 279, pp. 5-6.]

In support of her argument Plaintiff relies upon Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 884-85 (8th Cir. 1998), in which a divided Eighth Circuit held that the district court had abused its discretion in permitting testimony that the plaintiff was a practicing Catholic who had had an abortion, inasmuch as the defendant's expert had testified at her deposition that she had no opinion about whether the abortion had had an impact on the plaintiff. Plaintiff also relies upon Moore v. Metropolitan Water Reclamation Dist. of Greater Chicago, No. 02 C 4040, 2005 WL 2007291, at **7-8 (N.D. Ill. Aug. 12, 2005), in which the district court affirmed an oral ruling to exclude evidence of the plaintiff's two abortions on the grounds that the evidence was unduly prejudicial under Rule 403. The district court stressed that the parties had not raised the issue until trial, that the jurors had not been questioned on their opinions about such "a highly volatile issue," and that the defendant had other evidence regarding events in the plaintiff's life that could have caused her emotional distress. Id. at *7.

In Berry v. Deloney, 28 F.3d 604, 608 (7th Cir. 1994), on the other hand, this Circuit held that evidence that the plaintiff's prior and subsequent abortions was relevant "because the jury could find that it diminished the amount of the plaintiff's damages claim for pain, suffering, and emotional injuries." The court held that the district court's limiting instruction – which emphasized that the jury was to consider such evidence as to the issue of damages, and not to evaluate the plaintiff's character – "dispelled any potential prejudice against the plaintiff." Id.

In this case, Dr. Althoff identified Plaintiff's abortion as a preexisting condition and factor at page 35 in his report. Again, Plaintiff elected not to depose Dr. Althoff, and her citation to page 42 of his report mischaracterizes the same. [Doc. 279, p. 6.][7/] Moreover, unlike the plaintiff in Moore, Plaintiff seeks to exclude all evidence of any pre-existing sources of stress that may be viewed as unfavorable to her or inconsistent with her assertion that the defendants are the cause of her alleged emotional distress. Nevertheless, as indicated by Berry – and effectively by Moore as well – such evidence is relevant and any potential prejudice that could arise from the introduction of such evidence can be dispelled by a proper limiting instruction.

Again, Dr. Cuneo states in his report that "[t]o best understand [Plaintiff], one needs to view not only her mental status and psychological testing, but also to view her psychological functioning in the light of her past history." [See Report of Dr. Daniel J. Cuneo, p. 6.] So too should the jury. Accordingly, Plaintiff's Motion in Limine regarding her prior abortions and miscarriages should be denied.

**E.    Plaintiff's Criminal Record.**

Plaintiff's Motion in Limine further seeks to bar Aaron Rents from offering any evidence of Plaintiff's criminal record – in particular, what she characterizes as a "prior arrest". [Doc. 279, pp. 7-8.] Indeed, Plaintiff was arrested for Fourth Degree Assault in 2004 – just a year before beginning her employment with Aaron Rents – for striking a friend's 12-13 year old son in the face. [Alford Dep. III, pp. 40-45; See also Doc. 280, Exhibit B, p. 35.]   As a result, Plaintiff's employment with the Georgina House Rehabilitation Center was terminated as a result of her having a fourth degree assault on her record. (Pl. Dep. III, p. 40). Plaintiff also was not

---

[7/]   Plaintiff also cites to page 11 of Dr. Cuneo's report for the proposition that he determined that her post-traumatic stress was not caused by her abortion, but that citation does not support her specific assertion. [Doc. 279, p. 6.]

allowed to work with the elderly or children for a two year period as a result of her arrest. (Pl. Dep. III, pp. 44-45.) Notably, Plaintiff was hired by Aarons in 2005 during that two year period. (Pl. Dep. I, p. 79.)

Plaintiff nevertheless contends that such evidence is irrelevant and that "its probative value, if any, is substantially outweighed by its unduly prejudicial effect." [Doc. 279, pp. 7.] Plaintiff relies upon Maldonado v. Stinar, 2010 WL 3075680, at **5-6 (N.D. Il. Aug. 5, 2010), in which the district court rejected the defendant's arguments that evidence of five prior arrests for misdemeanor offenses were relevant to the plaintiff's claim for emotional distress damages in a case arising out of the plaintiff's seizure and arrest, and the contemporaneous search of his van. In that case, however, the district court had already granted summary judgment to the officers on the plaintiff's claims relating to his arrest, and the parties had stipulated that the only remaining claim to be determined by the jury was whether the search of the plaintiff's van was conducted in a reasonable manner. Id.; see also id. at *1. With regard to that claim, the district court held that the probative value of the plaintiff's prior arrests was very low, but would be highly prejudicial to him. Id. at *6. Maldaonado is therefore distinguishable from this case.[8/]

Plaintiff also relies upon the Second Circuit's decision in Basile v. Spagnola, No. 07-3404-cv, 2009 WL 3015489, at *2 (2nd Cir. Sept. 22, 2009), in which the defendant in a sexual

---

[8/] Furthermore, other district courts have held that evidence of prior arrests were relevant and admissible with regard to claims for emotional distress damages based on similar claims, and that any potential prejudice could be resolved by limiting instructions to the jury. See Gribben v. Village of Summit, No. 08 C -123, 2011 WL 289420, at *3 (N.D. Ill. Jan. 26, 2011) (the district court held that evidence of prior arrests and conviction of the plaintiff were relevant and admissible to his claim for intentional infliction of emotional distress, especially because the jury could be given a limiting instruction as to the purpose for which the evidence may be used; the plaintiff then dismissed his claim). See also Redmond v. City of Chicago, No. 06 C 3611, 2008 WL 539164, at *3 (N.D. Ill. Feb. 26, 2008) (holding that evidence of prior arrests and tickets may be admissible to determine the extent that the plaintiff suffered emotional distress, if any, from alleged false arrest/false imprisonment).

harassment case had sought to use her conviction for petit larceny to impeach her, alleging that she had misrepresented her criminal history on her job application.  Id.  The district court, however, had provided the defendant with the opportunity "to glean the impeachment value of the conviction through a specific question targeted at uncovering her alleged deceit, not the fact of the conviction itself" – and the defendant had taken the opportunity to do so.  Id.  The Second Circuit therefore held that the district court had not erred in refusing to admit evidence of the plaintiff's conviction itself.  Id.  As such, the defendants in Basile attempted to offer the prior conviction for impeachment purposes, not as another possible stressor in response to the plaintiff's claim for severe emotional distress.  Thus, Basile is distinguishable from this case.

But moreover, Plaintiff's conviction here is relevant to claims based upon her alleged emotional distress, as well as her claim for emotional distress damages generally.  Plaintiff asserts that neither Dr. Cuneo nor Dr. Althoff determined that her prior conviction caused her post-traumatic stress disorder, but even though she again mischaracterizes Dr. Althoff's report, Plaintiff's assertion misses the point.  Dr. Althoff concluded that Plaintiff "has an extraordinarily difficult time dealing directly with any behavioral expressions or even thoughts of being angry as she is likely preoccupied with control."  [Doc. 280, Exhibit B, p. 34.]  Dr. Althoff indicated that her "internalization and externalization of anger" could potentially impact her response to a stressor.  [Doc. 280, Exhibit B, pp. 38-40.]  In particular as to this case, Dr. Althoff concluded that "[a]lthough her anger could be caused by the alleged wrongful act, it is also possible that other things that happened at her work site may have contributed to her anger, in addition to some preexisting and coexisting factors identified above."  [Doc. 280, Exhibit B, p. 41.]  And Dr. Cuneo, Plaintiff's own expert, concluded that when she "becomes overwhelmed by stress, she becomes frustrated and angry," and when she "turns this anger outward, she becomes irritated

and lashes out at others." [See Report of Dr. Daniel J. Cuneo, p. 3.]  Therefore, contrary to Plaintiff's assertion, evidence of her prior conviction is not designed to impugn her credibility generally, but rather, to suggest other possible motivations for her complaints of alleged harassment, or any emotional distress damages suffered as a result.

Again, Dr. Cuneo, Plaintiff's own expert, acknowledges in his report that "[t]o best understand [Plaintiff], one needs to view not only her mental status and psychological testing, but also to view her psychological functioning in the light of her past history." [See Report of Dr. Daniel J. Cuneo, p. 6.]  So too should the jury.  Accordingly, Plaintiff's Motion in Limine should be denied as it relates to Plaintiff's criminal record.

F.     **Plaintiff's Relationships with Her Current and Former Husbands**.

Finally, Plaintiff's Motion in Limine seeks to bar Aaron Rents from offering any evidence of her "relationships with other men, including" her current and former husbands. [Doc. 279, pp. 8-11.]  Plaintiff asserts that such evidence is irrelevant and that "its probative value, if any, is substantially outweighed by its unduly prejudicial effect." [Doc. 279, p. 9.] Plaintiff further asserts that such evidence should be excluded because evidence that she engaged in other sexual behavior is "'generally inadmissible'" under Fed. R. Evid. 412. [Doc. 279, p. 10.]

The evidence Plaintiff seeks to exclude is relevant – and admissible – both as to her claims themselves and her alleged damages.  Among other evidence and testimony that Plaintiff effectively seeks to exclude is evidence of her sexual relations with her current husband, Dameian Daniels, on the morning of October 12, 2006 – the date on which she alleges that she was assaulted by Defendant Moore – as well as the previous night. [Doc. 279, p. 9.]  Although Plaintiff contends that Moore ejaculated on her stomach during the alleged assault, Moore's

semen was not found anywhere on her person. On the other hand, semen from Plaintiff's current husband was found on the sweatshirt Plaintiff was wearing during the alleged assault. Therefore, this evidence is highly relevant to contest Plaintiff's version of the alleged assault, and certainly is not inadmissible under Rule 412.[9]

Furthermore, Plaintiff testified that that her husband did not believe her complaints regarding her working conditions at Aaron Rents, and, in fact, during Dr. Althoff's evaluation of her, she rated her "increased arguments" with her husband regarding her employment at Aaron Rents as the most stressful event – more stressful even than her alleged "troubles" with Defendant Moore. [Doc. 280, Exhibit B, p. 15, 21.] Moreover, although Plaintiff told Dr. Althoff that her job at Aaron Rents had been "a dream come true," and that it was "a perfect life and then everything fell through" after the alleged assault, she had previously been "physically harmed when her [current] husband and her got into a fist fight." [Doc. 280, Exhibit B, pp. 16, 21.] Dr. Cuneo's evaluation also reports that Plaintiff "lamented that there was much violence in [her first] marriage, including allegations that her first husband, Jeffrey Schinstine, had "tried to strangle" her. [See Report of Daniel J. Cuneo, p. 7.]

Dr. Althoff concluded that "[t]he coexisting factor of her relationship with her [current] husband is very important to note because what she reports about him in the last few years is similar to what she has reported about the Aaron [Rents] work site, coworkers, etc." [Doc. 280,

---

[9] The cases relied upon by Plaintiff from outside this Circuit are wholly inapposite to the evidence regarding this particular event, as well as to evidence regarding her former and current marriages generally. See Wolak v. Spucci, 217 F.3d 157, 159-60 (2nd Cir. 2000) (holding that the district court did not err in excluding under Rule 412 evidence that a sexual harassment plaintiff had watched pornography); Basile, 2009 WL 3015489, at *2 (holding that a sexual harassment plaintiff had flashed her breasts while off-duty was properly excluded under the rule). In contrast, in Spina, 2001 WL 1491524, at **8-9, the Northern District of Illinois held that evidence of the plaintiff's romantic involvement with a co-worker was relevant both "to the issue of the egregiousness of the conduct directed toward" her, as well as to her "emotional state."

Exhibit B, p. 41.] Therefore, Plaintiff's own testimony and statements, as well as Dr. Cuneo and Dr. Althoff's evaluations, belie the assertion in her Motion that her relationship with her former and current husbands have "no bearing upon" her reaction to – and claims for damages based on – Moore's alleged conduct. [Doc. 279, p. 9.] Neither does such evidence fall within the scope of Fed. R. Evid. 412. See footnote 9, supra.

Accordingly, Plaintiff's Motion in Limine should be denied as it relates to her relationships with her current and former husband.

Respectfully submitted, this 15th day of April 2011.

                 s/Alisa Pittman Cleek
                 Alisa Pittman Cleek
                 Georgia Bar No. 581063
                 (*admitted pro hac vice*)
                 cleek@elarbeethompson.com

ELARBEE, THOMPSON,
SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
404/659-6700
404/222-9718 (facsimile)

                 Shari R. Rhode
                 Illinois Bar No. 02324598

RHODE & JACKSON, P.C.
1405 West Main Street
Carbondale, Illinois 62901
888/619-6766
618/529-8582 (facsimile)

Attorneys for Defendant Aaron Rents, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | | |
|---|---|---|
| ASHLEY ALFORD, | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:08-cv-00683-MJR-DGW |
| AARON RENTS, INC., d/b/a, AARON | ) | |
| SALES AND LEASE OWNERSHIP; | ) | |
| RICHARD MOORE; and BRAD MARTIN, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2011, I electronically filed the foregoing **DEFENDANT AARON RENTS, INC.'S RESPONSE TO PLAINTIFF ASHLEY ALFORD'S MOTION IN LIMINE** with the Clerk of Court using the CM/ECF System, which will automatically send notification of such filing to the following:

Judy L. Cates
David I. Cates
David Ratner
Martha McBrayer
Greg E. Roosevelt

s/Alisa P. Cleek
Alisa P. Cleek
Georgia Bar No. 581063

ELARBEE, THOMPSON, SAPP & WILSON, LLP
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303
404/659-6700
404/222-9718 (facsimile)

Attorneys for Defendant Aaron Rents, Inc.