IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ASHLEY ALFORD,                          )
                                        )
        Plaintiff-Intervenor,           )
                                        )
v.                                      )        Case No. 08-cv-0683-MJR
                                        )
                                        )
AARON RENTS, INC., d/b/a AARON          )
SALES AND LEASE OWNERSHIP, and          )
RICHARD MOORE,                          )
                                        )
        Defendants.                     )


MEMORANDUM AND ORDER

REAGAN, District Judge:

I. Introduction

        On October 2, 2008, Ashley Alford filed an intervenor complaint[1] in this

United States District Court against Aaron Rents, Inc. ("Aarons"), Richard Moore and Brad

Martin[2], alleging sexual discrimination and retaliation under Title VII of the Civil Rights

Act of 1964, **42 U.S.C. § 2000e,** *et seq.* Alford also alleged state law claims of negligence,

assault and battery, and intentional infliction of emotional distress. Alford was an

employee of Aarons and was under the direct supervision of Richard Moore, the store's

general manager.

---

[1] The EEOC was originally the named Plaintiff, but, on December 29, 2009, the undersigned
Judge entered a consent decree terminating the EEOC.
[2] On March 25, 2011, Martin was dismissed with prejudice after Alford informed the Court
that she did not oppose his motion for summary judgment (Docs. 270, 277).

Pending before the Court is Aarons' February 11, 2011, summary judgment motion (Doc. 244), Alford's response (Doc. 269), and Aarons' reply (Doc. 278). Analysis begins with an overview of key facts and recitation of the legal standard governing summary judgment motions in this Court.

## II. Factual Background

On October 31, 2005, Alford began working as a customer service representative at the Fairview Heights Aarons store, which is located in the Southern District of Illinois. Alford's job consisted of providing customer service in the store and by telephone, and did not require managerial experience or a college degree.

Upon starting work, Alford was given copies of Aarons' policies prohibiting discrimination and harassment based on sex, prohibiting retaliation and underlining Aarons' commitment to the professional advancement of its employees. These policies instruct employees to report all complaints of discrimination, harassment or denied advancement by calling Aarons' toll-free hotline. Aarons' hotline is staffed by employee relations personnel who are trained in investigating discrimination and harassment complaints.

Shortly after Alford began working at Aarons, beginning in November 2005, Moore began intentionally and inappropriately touching her, making uninvited advances toward her and calling her degrading pet names, such as "Trixie" and "Trix." The inappropriate behavior continued until October 12, 2006, the day Moore's assault on Alford led to his arrest.

Alford testified that the sexual harassment was *quid pro quo*: Moore sought sexual favors in return for her continued employment, her ability to leave for lunch or take a longer lunch hour and her ability to take a vacation. For example, Alford testified that Moore gave her unsought gifts for which he demanded "sucky-sucky." She testified that in September 2006, Moore grabbed her by her ponytail, unzipped his pants, pulled her head back and hit her in the head with his penis. On October 12, 2006, Moore again grabbed Alford, pulled her head against his pants, pulled out his penis and hit her on the head with it. Alford complained to Customer Accounts Manager Joe Skortz and co-worker Corey Carter about Moore's behavior toward her and told them she was scared of Moore. Moore assaulted Alford a second time on October 12: he grabbed her, threw her to the floor, pulled up her shirt, masturbated and ejaculated on her. Moore's semen and DNA were found on paper towels collected by the police from the store on October 12, 2006.

As a result of the foregoing acts, Alford submits that she had a well-founded fear of imminent peril caused by Moore's unwanted and forceful sexual advances and his size.

Alford asserts that she reasonably took advantage of Aarons' hotline protocol and other preventive and corrective measures provided in Aarons' sexual harassment policy. She attempted to contact Aarons' sexual harassment hotline, but her call was unanswered and she was instructed to leave a message. She also complained to her supervisor, Skortz, about Moore "goosing" her by putting his thumb between her buttocks. Skortz recommended that she call Regional Manager Brad Martin or Aarons' hotline

number. He was unwilling to report Moore because he was afraid he would lose his job, but he reported to human resources that Alford and her mother had called Aarons' hotline. Alford's mother, Belynda Woods, called the hotline on April 3, 2006, but could not leave a message because she was asked for a code. Woods received a call after the October 12 attack from Vanessa Adams, Aarons' employee relations specialist, who left a voice message stating that she was returning Woods' April 2006 hotline call. Skortz told Adams that Alford had threatened to sue Aarons and Moore to stop the harassment.

Alford also called the hotline number on April 3, 2006, and left the message, "My name is Ashley Alford and I need help." In order to leave a message, Alford had to leave her store code. She did not leave a callback number, but she was the only female employee in the store. Several months after this call, Regional Manager Martin met with Alford and Moore. Martin asked Alford in Moore's presence if she was being sexually harassed. Alford states that she declined to discuss the issues in Moore's presence because she feared repercussions from what should have been a private and confidential inquiry based on Aarons' policy. Alford submits that Moore retaliated against her by grabbing her by the neck and threatening her. According to Alford, Martin, the regional manager and alter-ego of Aarons, failed to conduct a meaningful investigation into her allegations. Alford maintains that Martin's actions and inactions amounted to willful and wanton misconduct and/or reckless disregard for her health and safety since he knew that she had repeatedly made complaints.

In September 2006, Alford complained about Moore's harassment to Sales

Manager John Peterson. Peterson told her that she should call Martin or Corporate. That same month, Alford complained to Peterson and to Sales Manager Dave Grater that the lock on the security room door needed to be fixed because Moore had locked her in and assaulted her. The door was not fixed prior to the October 12 assault.

Within hours after the second assault on October 12, Vanessa Adams traveled from Atlanta to investigate Alford's allegations. Assisted by Martin, Adams interviewed store staff. She also analyzed security tapes, reviewed inventory reports and discussed the incident with the police. Moore was immediately suspended and did not return to work for Aarons. Alford resumed her duties.

Alford contends that she had repeatedly expressed an interest in becoming a sales manager. Alford did not submit a written application or otherwise respond to an advertisement seeking applicants for that position. Martin and Matt Pinkerton, Moore's replacement, told Alford that she could not be promoted without meeting the minimum qualifications, but, according to Aarons, there is no evidence that Alford was deterred or prevented from applying for a store manager job.

However, Alford states that after she filed her claim with the EEOC, Pinkerton told her she should not have done that – despite Aarons' policy that forbids retaliation for reporting. Alford asserts that she was told at that time that she was no longer considered for management positions. She also contends that she was ostracized by her fellow employees and her work environment was made hostile by direct actions of her managers.

III.    **Summary judgment standard**

Summary judgment is appropriate where the pleadings, discovery materials, and any affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Turner v. The Saloon, Ltd.,* **595 F.3d 679, 683 (7th Cir. 2010);** *Durable Mfg. Co. v. U.S. Department of Labor,* **578 F.3d 497, 501 (7th Cir. 2009),** *citing* **FED. R. CIV. P. 56(c).** *Accord Alabama v. North Carolina,* **-- U.S. --, 130 S. Ct. 2295, 2308 (2010);** *Levy v. Minnesota Life Ins. Co.,* **517 F.3d 519 (7th Cir. 2008);** *Breneisen v. Motorola, Inc.,* **512 F.3d 972 (7th Cir. 2008),** *citing Celotex Corp. v. Catrett,* **477 U.S. 317, 322-23 (1986).**

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.,* **528 F.3d 508, 512 (7th Cir. 2008).** *Accord Reget v. City of La Crosse,* **595 F.3d 691 (7th Cir. 2010);** *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.,* **491 F.3d 625, 630 (7th Cir. 2007).**

What the undersigned may *not* do In deciding a summary judgment motion is evaluate the weight of the evidence, judge the credibility of witnesses or determine the truth of the matter. The court's only role is to determine whether there is a genuine issue of triable fact. *National Athletic,* **528 F.3d at 512,** *citing Doe v. R.R. Donnelley & Sons Co.,* **42 F.3d 439, 443 (7th Cir. 1994).**

A factual dispute is genuine "only if a reasonable jury could find for either party," and disputed facts must be outcome-determinative to be "material" and preclude summary judgment. *Montgomery v. American Airlines, Inc.*, **626 F.3d 382, 389 (7th Cir. 2010).** *See also Van Antwerp v. City of Peoria, Illinois*, **627 F.3d 295, 297 (7th Cir. 2010).** But, as the Seventh Circuit Court of Appeals recently reiterated, in assessing the record before him, the undersigned Judge bears in mind that "the party opposing the motion gets the benefit of all facts that a reasonable jury might find." *Loudermilk v. Best Pallet Co., LLC.*, **-- F.3d --, 2011 WL 563765, *2 (7th Cir. Feb. 18, 2011).**

## IV.    Analysis

### A.    Claim of Sexual Harassment

To prevail on her Title VII sexual harassment claim, Alford must show: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on her sex; (3) the sexual harassment had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being; and (4) a basis for employer liability exists. *Durkin v. City of Chicago*, **341 F.3d 606, 611 (7th Cir. 2003),** *citing Hall v. Bodine Elec. Co.*, **276 F.3d 345, 354-55 (7th Cir. 2002).**

Generally, employers are vicariously liable for an actionable hostile environment created by a supervisor with authority over the victimized employee. *Faragher v. City of Boca Raton*, **524 U.S. 775, 807 (1998);** *Burlington Indus., Inc. v. Ellerth,*

**524 U.S. 742, 765 (1998);** *Molnar v. Booth,* **229 F.3d 593, 600 (7th Cir. 2000).** If the harassment culminated in tangible employment action against the employee, the employer is strictly liable for the supervisor's acts. *Faragher,* **524 U.S. at 808;** *Ellerth,* **524 U.S. at 760-61**.

However, if the supervisor did not take any tangible employment action against the employee, the employer may raise an affirmative defense to liability or damages. *Faragher,* **524 U.S. at 807;** *Ellerth,* **524 U.S. at 765.** To succeed in its affirmative defense, the employer must show (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by her employer or to avoid harm otherwise. *Faragher,* **524 U.S. at 807;** *Ellerth,* **524 U.S. at 765**.

In the case at bar, questions of fact exist as to whether Aarons exercised reasonable care to prevent and correct promptly Moore's sexually harassing behavior as well as whether Alford reasonably availed herself of any preventive or corrective opportunities provided by Aarons to avoid harm. While Aarons does have a sexual harassment policy in place and a hotline number for reporting harassment, that alone does insulate Aarons from liability. *See Silk v. City of Chicago,* **194 F.3d 788, 809 (7th Cir. 1999).** The record suggests that Aarons failed to react to Alford's complaints and did not seriously investigate them until after Aarons received word that Alford had been assaulted and that Moore had been arrested. *See Baskerville v. Culligan Internat'l Co.,* **50 F.3d 428, 432 (7th Cir. 1995),** *citing Steiner v. Showboat Operating Co.,* **25 F.3d 1459 (9th Cir. 1994).**

When subjected to Moore's conduct, Alford expressed her displeasure not only to him but also to other managers and on the hotline. The hotline call rang directly into Employee Relations Specialist Vanessa Adams' phone. Aarons admitted that only about 11 per cent of the sexual harassment calls per month were answered, and Adams admitted that she often let calls go to voicemail. No one took any serious action against Moore until after the October 2006 assault, nearly a year after Moore's unwanted advances began.

It is also noteworthy that the first action ever taken against Moore was taken not by Aarons but by the police. It was this final incident that resulted in Moore's suspension.

Therefore, because a question of fact exists as to (1) whether the sexual harassment Alford faced had the effect of unreasonably interfering with her work performance in creating an intimidating, hostile, or offensive working environment that seriously affected her psychological well-being, and (2) whether a basis for employer liability exists, Aarons' motion for summary judgment on Alford's claim of sexual harassment cannot be granted as a matter of law.

**B.    Claim of Retaliation**

Under Title VII, unlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination. ***Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003), *citing Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751 (7th Cir. 2002), and 42 U.S.C. § 2000e-3.** A Title VII

plaintiff may establish a prima facie case of retaliation by either direct or indirect evidence.

There are two methods of presenting <u>direct</u> evidence.  First, the plaintiff can present "evidence that, if believed by the trier of fact, would prove the fact in question 'without reliance on inference or presumption.'"  ***Rogers*, 320 F.3d at 753, *quoting Walker v. Clickman*, 241 F.3d 884, 888 (7th Cir. 2001), and *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999).**  Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus."  ***Rogers*, 320 F.3d at 753, *citing Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000).**  Such admissions "are rarely encountered."  ***Rogers*, 320 F.3d at 753, *citing Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 576 (7th Cir. 2001).**  The second method of direct proof involves circumstantial evidence, *i.e.*, evidence that allows a jury to *infer* intentional discrimination by the decision-maker.  ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997).**

A Title VII plaintiff can also choose the <u>indirect</u> method of proof.  Under this method, the plaintiff must show that after engaging in a protected activity, such as filing a discrimination charge against the employer:

> only [she], and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though [she] was performing [her] job in a satisfactory manner.

***Stone v. City of Indianapolis Public Utilities Div.*, 281 F.3d 640, 644 (7th Cir. 2002).**

If the plaintiff makes this showing *and* the defendant presents no evidence in response, then the plaintiff is entitled to summary judgment.  ***Id.***  On the other hand, if the defendant presents un-rebutted evidence of a noninvidious reason for the adverse

action, then the *defendant* is entitled to summary judgment. ***Id.*** If neither of these occurs, the case proceeds to trial. ***Id.***

In ***Stone***, the Seventh Circuit clarified that this formulation eliminated the requirement of earlier decisions that the plaintiff had to prove a "causal link" between her protected activity and the adverse employment action. ***Rogers*, 320 F.3d at 755,** *citing* ***Stone*, 281 F.3d at 642-44.**

Alford has presented no direct evidence of retaliation – either via an admission of a decision-maker at Aarons or circumstantial evidence supporting an inference of intentional discrimination by Aarons. Thus, the Court focuses on the second method of proof, the indirect approach, an "adaptation of ***McDonnell Douglas*** to the retaliation context." ***Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524, 531 (7th Cir. 2003),** *citing Stone*, **281 F.3d at 644.**

The question is whether Alford has shown that (1) she engaged in statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. ***Haywood*, 323 F.3d at 531,** *citing Stone*, **281 F.3d at 644.** Alford asserts that her work environment was made hostile by direct actions of her managers and that she was ostracized by her fellow employees. She states that as a direct and proximate result of Aarons' retaliation against her she suffered mental anguish, distress and loss of compensation because of her failure to be promoted.

The Seventh Circuit has defined an adverse employment as "more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Traylor v. Brown*, **295 F.3d 783, 788 (7th Cir. 2002)**, *citing Rabinovitz v. Pena*, **89 F.3d 482, 488 (7th Cir. 1996).** It is important to note that "not everything that makes an employee unhappy" will suffice to meet the adverse employment action requirement. *Id.*, *citing Smart v. Ball State Univ.*, **89 F.3d 437, 441 (7th Cir. 1996).** "[T]he retaliatory denial of a promotion is a materially adverse action." *Stephens v. Erickson*, **569 F.3d 779, 787 (7th Cir. 2009)**, *citing Hall v. Forest River, Inc.*, **536 F.3d 615, 620-21 (7th Cir. 2008)**.

Where retaliation allegations arise in a failure-to-promote context, the plaintiff must show that 1) she belongs to a protected class; 2) she applied for and was qualified for the position sought; 3) she was rejected for that position; and 4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff. *Grayson v. City of Chicago*, **317 F.3d 745, 748 (7th Cir. 2003)**, *citing Johnson v. Nordstrom, Inc.*, **260 F.3d 727, 732 (7th Cir. 2001)**.

Although Aarons argues that Alford cannot demonstrate that she was qualified for the position or that she ever applied to be a sales manager, Alford is able to demonstrate the elements of a prima facie case of retaliation.

First, the fact that Alford did not apply in writing for the sales manager position is not probative as to whether her failure-to-promote claim survives summary judgment. As explained by the Supreme Court in the context of a race discrimination case, the message that potential applicants for a position need not apply "can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices," including the manner in which he responds to "casual or tentative inquiries." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365 (1977). "When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application." *Id*. The Court then explained, "While the most convincing proof would be some overt act..., the District Court may find evidence of an employee's informal inquiry, expression of interest, or even unexpressed desire credible and convincing." *Id.,* 431 U.S. at 371 n. 58. Here, Alford testified that she sought promotion and that she attended sales manager training. Even if Alford did not make written application for the position, she has offered evidence of interest in the position that is credible and convincing.

Second, there is a triable question of fact as to whether Alford was qualified for a sales manager position. Aarons asserts that the "undisputed evidence" shows that Alford was unqualified for a sales manager position because she did not possess a minimum of two years of college and/or two years of management experience. However, that evidence is anything but undisputed. The information posted for Aarons' manager

trainee position shows that only a high school education was required - and as for required experience, none was specified. Alford testified that she was originally encouraged to seek promotion to a sales manager position and that sales manager John Peterson had encouraged her to follow him around so she could learn everything she needed to know about being a sales manager. She also testified that Martin suggested that she attend sales manager training, and she did.

But, according to Alford, within weeks of Aarons' receiving her February 15, 2007, EEOC charge, Martin and General Manager Matt Pinkerton summoned her into a meeting and informed her that she would not be promoted to sales manager because she failed to meet the minimum education and experience requirements. While temporal proximity alone is insufficient to support an inference of causation, *Argyopoulos v. City of Alton*, **539 F.3d 724,734 (7th Cir. 2008)**, Alford's testimony regarding the sea change in attitude towards her after she filed her EEOC charge is sufficient to stave off summary judgment.

In sum, Alford has met the requirements of a prima facie case of retaliation. The burden, therefore, shifts to Aarons to articulate a legitimate, nondiscriminatory reason for its adverse employment actions. Besides the education and experience requirements discussed above, Aarons contends that Alford was not meeting its legitimate expectations, as evidenced by her receiving failing scores on several "phone shops." In February, March and April, 2006 on three occasions, Alford received a score of zero on phone shops.[3] As a

---

[3] Aarons hires a third-party company to make random calls to the Fairview Heights store to score employees on how they respond to a phone call. Aarons requires an employee to receive a

result of this performance, Alford received written counseling on May 6, 2006. Alford again received zero scores on phone shops that occurred on May 16, June 28 and September 6, 2006. Aarons also asserts that Alford needed consistent counseling to address her tardiness.

Although these instances could show that Alford was not meeting Aarons' legitimate expectations, they do not warrant summary judgment because they are an "apples and oranges" argument. Alford testified and Aarons has also maintained that the reason Alford could not be promoted to sales manager was because she lacked education and experience (which the Court has already found to be a triable issue). There was no contemporaneous statement by Aarons management that the reason for failing or refusing to promote Alford was poor performance.

In sum, a rational trier of fact could infer that Aarons' articulated reason for failing to promote Alford was pretextual. *See St. Mary's Honor Ctr. v. Hicks*, **509 U.S. 502, 515 (1993)**.

Alford testified that after Aarons was notified of her EEOC charge, she was ostracized and unfairly disciplined and criticized, resulting in her constructive discharge on April 20, 2007. Alford's attempt to add a constructive discharge claim in her memorandum in opposition to summary judgment must fail. The Court has carefully reviewed Alford's amended complaint and finds no constructive discharge claim alleged. It is "axiomatic" that a complaint cannot be amended by briefs filed in opposition to a

_____

score of 70 to pass a phone shop.

dispositive motion.  *Car Carriers, Inc. v. Ford Motor Co.*, **745 F.2d 1101, 1107 (7th Cir. 1984).**

Because genuine issues of material fact remain with regard to Alford's failure-to-promote claim, summary judgment is not warranted on her retaliation claim.

### C.    State law claims

Aarons contends that summary judgment is warranted on Alford's state law claims.  Aarons asserts that Alford's negligence and intentional infliction of emotional distress (IIED) claims involve no independent claim for relief apart from her allegations of sexual harassment, so these state law claims are preempted by the Illinois Human Rights Act (IHRA).  In the alternative, Aarons maintains that it is entitled to summary judgment on the substance of her state law claims.  Aarons contends that Alford cannot show that it was negligent in hiring, retaining and supervising Moore.  According to Aarons, Alford cannot show that Aarons negligently investigated her complaints.  Lastly, Aarons submits that Alford cannot show any causal relationship between her allegations of negligent repair and Moore's alleged conduct.

### 1.    IHRA Preemption

Aarons contends that all of Alford's state law claims are preempted by the IHRA, **775 ILCS §§ 5/8-111(C), 5/2-102(D)**, and as a result, this Court lacks subject matter jurisdiction over those claims.

The Seventh Circuit has delineated a test for determining when state law tort claims, such as Alford's negligent retention, negligent supervision, and IIED claims, are preempted by the IHRA:

> Whether a state-law tort claim is preempted depends on whether the IHRA furnishes the legal duty that the defendant was alleged to have breached. If the plaintiff's allegations against the defendant implicate *only* a duty provided by the IHRA, such as the duty of employers to refrain from discriminating against employees on the basis of their race or national origin, then the plaintiff's claim is preempted. ***Bannon et al. v. University of Chicago*, 503 F.3d 623, 630 (7th Cir. 2007) (emphasis added) (citations and quotations omitted).**

In considering whether an IIED claim was preempted by an IHRA sexual harassment suit, the Seventh Circuit explained that the proper inquiry is whether a plaintiff can prove the elements of her state law claim "independent of legal duties furnished by the IHRA," *not* whether the *facts* that support the tort claim "could also have supported a discrimination claim." *Naeem v. McKesson Drug Company*, **444 F.3d 593, 604 (7th Cir. 2006).** "[I]f the conduct would be actionable even aside from its character as a civil rights violation because the IHRA did not furnish the legal duty that the defendant was alleged to have breached, the IHRA does not preempt a state law claim seeking recovery for it." *Id.*, quoting *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000); *see Maksimovic v. Tsogalis*, **687 N.E.2d 21, 23 (Ill. 1997) (holding that the plaintiff stated independent state law tort claims for assault, battery and false imprisonment that were not inextricably linked to her claim of sexual harassment).**

As in *Naeem*, Alford's claims rest not just on behavior that is sexually

harassing, but on behavior that would be a tort even aside from its character as a civil rights violation. Consequently, her claim is not preempted by the IHRA.

2. **IIED**

To state a claim for IIED, Alford must show that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew that there was at least a high probability that his conduct would inflict severe emotional distress; and (3) the defendant's conduct did cause severe emotional distress." *Naeem*, **444 F.3d at 605**. As Aarons points out, Illinois courts have required a "heightened level of egregiousness" and conduct that has been "outrageous" and "extreme" to maintain an IIED claim.

Put simply, the conduct to which Alford has testified, as detailed above, is sufficiently egregious to stave off summary judgment on her IIED claim.

3. **Negligent hiring, retention and supervision of Moore**

An Illinois claim for negligent hiring, or retention of "an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons" requires proof "(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury." *Van Horne v. Muller*, **705 N.E.2d 898, 904-05 (Ill. 1998) (citations omitted)**. A claim for negligent supervision requires a showing that the

defendant had a duty to supervise its employees, that the defendant negligently supervised its employees, and that "such negligence proximately caused plaintiff's injuries." ***Mueller v. Community Consolidated School District 54, et al.,*** **678 N.E.2d 660, 664 (Ill. App. Ct. 1997).**

Here, a jury could reasonably conclude that Aarons knew or should have known that Moore was particularly unfit to be a store supervisor yet continued to employ him. Alford testified that she reported Moore's conduct to sales managers and that she and her mother called the hotline number. Her complaints about Moore's conduct and requests for help began at least six months before the October 12 assault that finally galvanized Aarons into taking action. Consequently, summary judgment on claims of negligent retention and supervision of Moore is not warranted.

Alford has presented no evidence, however, that Aarons was negligent in hiring Moore, and it appears that she has abandoned this claim. Accordingly, the Court will enter summary judgment on the claim of negligent hiring.

4. **Negligent investigation**

Aarons maintains that Alford's claim of negligent investigation is wholly unjustified because Aarons was not negligent in the operation and maintenance of its hotline, and it had no notice of any alleged sexual harassment by Moore before October 12, 2006. Alford responds that Aarons was negligent in its investigation of her sexual harassment complains, and that Aarons' negligence was the proximate cause of her assault and battery.

To withstand summary judgment on her negligent investigation claim, Alford must show that Aarons was negligent in discovering or remedying the harassment. ***See Durkin v. City of Chicago*, 341 F.3d 606, 612 (7th Cir. 2003), *citing Parkins v. Civil Constructors*, 163 F.3d 1027, 1032 (7th Cir. 1998).** In order to defend against harassment charges, an employer can show that it exercised reasonable care to discover and rectify promptly any sexually harassing behavior. ***Id.*** However, "[s]ince an employer is not omniscient, it must have notice or knowledge of the harassment before it can be held liable." ***Id.***

The key channel for complaints of sexual harassment was the hotline, which Vanessa Adams described as a toll-free number that employees could call when they felt they been sexually harassed or discriminated against so that they could be heard by the company. An investigation into the employee's complaint would be conducted along with a follow-up to resolve the issue raised. As stated above, Adams admitted that she did not always answer when the hotline phone rang.

Aarons' Business Code of Conduct and Ethics provides that any employee who believed she had been subjected to harassment should promptly call Aarons hotline. Furthermore, any supervisor who became aware of possible harassment was required to immediately advise Aarons' legal department. All reports were to be investigated promptly and confidentially to the extent possible, and any form of retaliation against a reporting employee was strictly prohibited.

Unquestionably, issues of fact remain as to whether Alford's call was sufficient to put Aarons on notice that she was being harassed. The Court is unimpressed with Aarons' statement that the hotline was used for wide-ranging issues such as help with uniforms. Where an employee is given a specific number to call to report harassment, an employee calling that number can reasonably assume that the person answering that number is ready to help with that specific issue. Whether Alford's message constituted sufficient notice to alert Aarons to the situation and to prompt an investigation is a jury question.

Additionally, Alford testified that she complained to supervisors who, under the policy, were required to report the harassment. Whether her complaints were specific enough to put her supervisors on notice that they should make that report is a jury question.

Lastly, it is a jury question whether Martin investigated thoroughly and "confidentially to the extent possible" when he asked Alford in Moore's presence if she was being sexually harassed.

Summary judgment is not warranted on Alford's claim of negligent investigation.

5.       **Negligent maintenance and repair**

Alford alleges that Aarons was negligent by failing to fix a faulty lock on the security room door and by providing insufficient lighting in the storage area. According to Alford, these conditions created an unsafe working environment which caused her to

fall victim to Moore's assaults. Aarons responds that even assuming these conditions existed, Alford cannot show that they caused any injury she suffered.

"The issue of proximate cause in a negligence action is generally an issue of material fact to be decided by the trier of fact; however, if the facts as alleged show that the plaintiff would never be entitled to recover, proximate cause can be determined by a court as a matter of law." *Strutz v. Vicere,* **906 N.E.2d 1261, 1264 (Ill.App.Ct. 2009),** *citing Abrams v. City of Chicago,* **811 N.E.2d 670 (Ill. 2004)**. "A plaintiff is not entitled to recover unless the defendant's alleged negligence is the legal cause of the decedent's injuries." *Id., citing Kellman v. Twin Orchard Country Club,* **560 N.E.2d 888 (Ill. 1990).** "Liability cannot be predicated on conjecture, rather proximate cause is established when there is reasonable certainty that the defendant's acts or omissions caused the injury." *Id., citing Kimbrough v. Jewel, Cos.,* **416 N.E.2d 328 (Ill. 1981).**

The record shows that Moore frequently assigned Alford to work in the security room, which was poorly lit, had only one security camera towards the back door and had a malfunctioning door. Alford testified that in September 2006, the month prior to the second and third assaults, she complained to sales managers John Peterson and Dave Grater that the lock on the security room door needed to be fixed because Moore had locked her in and assaulted her. No action was taken.

The facts do *not* conclusively show that Alford would never be entitled to recover, so the issue of proximate cause is an issue of material fact to be decided by the trier of fact.

## V.  Underline{Conclusion}

The Court finds that genuine issues of material facts exist as to Alford's sexual harassment and retaliation claims under Title VII as well as her state-law claims, IIED, negligent retention and supervision, negligent investigation and negligent repair. Aarons is entitled to summary judgment as a matter of law only on the claim of negligent hiring.  The Court notes that summary judgment is not warranted on the issue of constructive discharge because Alford did not plead constructive discharge.  Accordingly, the Court **GRANTS in part and DENIES in part** Aarons' motion for summary judgment (Doc. 244).  The motion is **GRANTED** as to the claim of negligent hiring and **DENIED** as to the claims of sexual harassment and retaliation under Title VII as well as the state-law claims of IIED, negligent retention and supervision, negligent investigation and negligent repair.

IT IS SO ORDERED.

DATED: May 3, 2011

s/Michael J. Reagan
MICHAEL J. REAGAN
United States District Judge